# Illinois Official Reports

## Appellate Court

*People v. Toy*, 2013 IL App (1st) 120580

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAMEN TOY, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-0580 |
| Filed | December 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Pursuant to its supervisory authority under Supreme Court Rule 615(b)(2), rather than remanding defendant's case for second-stage postconviction proceedings, the appellate court reversed the dismissal of his postconviction petition claiming that his enhanced sentences for aggravated criminal sexual assault with a firearm violated the proportionate penalties clause because that offense contained the same elements as armed violence predicated on criminal sexual assault, but the armed violence offense had a lesser sentence, and the appellate court then granted the petition, vacated his sentences, and remanded the case for resentencing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CR-17327; the Hon. James Michael Obbish, Judge, presiding. |
| Judgment | Reversed and remanded for resentencing. |

Counsel on Appeal       Michael J. Pelletier, Alan D. Goldberg, and Karl H. Mundt, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Sheilah O'Grady-Krajniak, Assistant State's Attorneys, of counsel), for the People.

Panel       JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Taylor concurred in the judgment and opinion.

## OPINION

¶ 1    Following the summary dismissal of his *pro se* postconviction petition, defendant Damen Toy argues for the first time on appeal that he has an arguable claim that his sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and asks this court to remand his petition for second-stage proceedings. Specifically, defendant contends that his sentences for aggravated criminal sexual assault with a 15-year firearm enhancement violate the proportionate penalties clause because armed violence based on a sexual assault contains identical elements, but the offenses have different penalties.

¶ 2    Following a jury trial, defendant was found guilty of two counts of aggravated criminal sexual assault and two counts of attempted armed robbery for the June 2004 crimes committed against B.H. and Paul Watkins-Lash. We will discuss the facts as necessary for the issues raised on appeal. For a more detailed discussion of these facts, see *People v. Toy*, 407 Ill. App. 3d 272 (2011). Prior to trial, defendant informed the court that he wanted to represent himself, which the trial court permitted after questioning defendant about his decision at multiple court dates.

¶ 3    In the early morning hours of June 27, 2004, B.H. and Watkins-Lash were sitting on the porch of B.H.'s house, located at 2415 W. Pensacola in Chicago. Watkins-Lash went to a nearby gas station to buy cigarettes and walked back to B.H.'s house. B.H. noticed a man walking behind Watkins-Lash. Watkins-Lash rejoined B.H. on the porch. The man walked by the house and then approached them. He asked for a cigarette, which Watkins-Lash gave him along with a lighter. The man left, but returned a short time later. Watkins-Lash stated that the man was "holding a gun cupped in his jacket, like the barrel of the gun. He had the gun out." When asked if there was any doubt in his mind that what the man had was a gun, Watkins-Lash stated, "That was a gun." He said the gun was in front of his face, but pointed down toward the ground. B.H. also testified that the man had a gun. The man then demanded that they give him

- 2 -

their money and threatened to kill Watkins-Lash. When they told the man that they did not have any money, he searched through their pockets.

¶ 4 The man then told Watkins-Lash to stay on the porch or he would shoot Watkins-Lash. He took B.H. by her wrist and took her into the gangway between her house and the house next door. He turned her to face the house with her arms up. He told her to remove her pants, but then removed them himself. B.H. testified that the man's penis entered her vagina and his penis also touched her anus, but did not enter it. During the sexual assault, B.H. felt something in the back of her head. She assumed that it was the gun because the man was threatening to kill her.

¶ 5 Eventually, Watkins-Lash left the porch and came around to the gangway. When he saw that B.H. was being sexually assaulted, he yelled at the man. The man stopped and turned to run away. B.H. tried to tackle the man, but he struck her and ran away. They went into B.H.'s house and woke her parents. After being told about the sexual assault, B.H.'s father went outside with a flashlight to look for the assailant. He recovered a key chain with a key from his front yard and turned it over to the police. They called the police and B.H. was taken to Swedish Covenant Hospital.

¶ 6 A police officer testified that B.H. identified defendant from a photo array. Defendant was then arrested. At the time of the arrest, a police officer tried the key recovered from B.H.'s yard and it worked in the doors for defendant's building. Defendant was then placed in a lineup. B.H. identified defendant, but Watkins-Lash did not make an identification. B.H. also identified defendant in court as the man who sexually assaulted her.

¶ 7 The police searched the area between the scene of the crime and defendant's address. They found a Cubs hat and Bulls breakaway pants in a residential garbage can and a blue windbreaker in a dumpster behind a grocery store. These clothes matched a description given to the police by B.H. DNA was recovered from the Cubs hat and it matched defendant's DNA with a reasonable degree of scientific certainty. A cigarette recovered near the crime scene was also tested, but did not match defendant's DNA. The evidence also showed that no semen was present in B.H.'s sexual assault kit.

¶ 8 Additionally, Christopher Palacios, a neighbor of B.H., heard a scuffle outside and looked out of his window. He saw a white person arguing with a black person. He said the black person ran away in a northwest direction. Palacios never identified defendant in a lineup or photo array, but stated on cross-examination that defendant was the man he saw.

¶ 9 Defendant testified on his own behalf. He admitted that the recovered clothes belonged to him, but stated that the clothes were stolen from his gym bag a couple days before the crime. He attempted to present an alibi defense, but the trial court denied his request because he failed to notify the State prior to trial. Defendant presented one witness, Ernest Jones. Jones was defendant's roommate for six years. He stated that he never knew defendant to have a knife, gun or any weapon. He said the police searched their apartment and did not recover a handgun.

¶ 10 At the sentencing hearing, the trial court sentenced defendant to 45 years on the first count of aggravated criminal sexual assault (penis/vagina contact) and 30 years on the second count of aggravated criminal sexual assault (penis/anus contact), to be served consecutively. The sentences included a 15-year add-on because the jury found that defendant was armed with a

firearm. The court also imposed two concurrent sentences of 10 years for the two counts of attempted armed robbery, both of which were also to be served concurrently with the sentences for aggravated criminal sexual assault. Defendant received an additional consecutive sentence of six months for contempt of court. Defendant received an aggregate sentence of 75 years and 6 months. Defendant filed a motion to reconsider his sentence, which the trial court denied.

¶ 11 On direct appeal, defendant argued that (1) his waiver of counsel was not valid because the trial court did not give him oral admonishments about the potential range of sentences; (2) his conviction for attempted armed robbery should be reduced to simple robbery because the State failed to prove that he was armed with a "dangerous weapon"; (3) the State failed to prove that defendant possessed a "firearm" within the meaning of the aggravated criminal sexual assault statute (720 ILCS 5/12-14(a)(8) (West 2004)); and (4) defendant was denied the right to a fair sentencing hearing and the right to counsel because the trial court refused to appoint the public defender at the sentencing stage of the proceedings. This court affirmed defendant's conviction and sentence. *People v. Toy*, 407 Ill. App. 3d 272 (2011).

¶ 12 In November 2011, defendant filed his *pro se* postconviction petition, alleging several claims of ineffective assistance of appellate counsel. Specifically, defendant asserted that his appellate counsel was ineffective for failing to raise the following issues on direct appeal: (1) the State committed a *Brady* violation for failing to comply with defendant's discovery request; (2) the trial court erred by allowing the State to use evidence that had not been disclosed to defendant prior to trial; (3) the trial court failed to comply with Supreme Court Rule 431(a) (Ill. S. Ct. R. 431(a) (eff. May 1, 2007)) by not allowing defendant to ask supplemental questions during *voir dire*; (4) the trial court erred in failing to have the court reporter read back testimony requested by the jury during deliberations when the transcript was not available; (5) the trial court erred in failing to lay a proper foundation to establish the accuracy of the transcripts before allowing the jury to review the testimony during deliberations; (6) the trial court erred in failing to give the jury a limiting instruction on the use of transcripts during deliberations; (7) the trial court violated Rule 431(a) by not asking the potential jurors the supplemental questions submitted by defendant; (8) the State made improper comments during closing arguments; (9) defendant's right to confront witnesses against him was violated because the DNA expert who testified at trial was not the person who performed the DNA analysis; (10) the trial court erred in allowing evidence to be admitted that had been obtained in violation of defendant's right to counsel; (11) the trial court erred in denying defendant's request for the appointment of a private investigator; and (12) the trial court erred in denying defendant access to the crime scene.

¶ 13 In January 2012, the trial court summarily dismissed defendant's postconviction petition in a written order, finding that the issues raised by defendant were frivolous and patently without merit.

¶ 14 This appeal followed.

¶ 15 On appeal, defendant raised only one claim in which he argues for the first time that his sentences for aggravated criminal sexual assault with the 15-year firearm enhancement violates the proportionate penalties clause of the Illinois Constitution. He contends that this claim is arguable in both law and fact and his petition should be advanced for second stage

review. Specifically, defendant asserts that his sentence is void because the sentence for aggravated criminal sexual assault with a firearm possesses the same elements as armed violence based on sexual assault, but the offenses have different penalties.

¶ 16 The Illinois Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1 through 122-8 (West 2008)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2008); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Coleman*, 183 Ill. 2d at 380. "A proceeding brought under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999). "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Although any claim of violation of constitutional rights not raised in an original or amended petition is forfeited (725 ILCS 5/122-3 (West 2010)), an attack on a void judgment may be made at any time (*People v. Thompson*, 209 Ill. 2d 19, 25 (2004)). The standard of review for dismissal of a postconviction petition is *de novo*. *Coleman*, 183 Ill. 2d at 389.

¶ 17 At the first stage, the circuit court must independently review the postconviction petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2002). A petition is frivolous or patently without merit only if it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis in law or fact if it is "based on an indisputably meritless legal theory," such as one that is "completely contradicted by the record," or "a fanciful factual allegation," including "those which are fantastic or delusional." *Hodges*, 234 Ill. 2d at 16-17.

¶ 18 If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2002). At the dismissal stage of a postconviction proceeding, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief under the Act. *Coleman*, 183 Ill. 2d at 380. At this stage, the circuit court is not permitted to engage in any fact-finding or credibility determinations, as all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true. *Coleman*, 183 Ill. 2d at 385.

¶ 19 If the circuit court does not dismiss the postconviction petition as frivolous or patently without merit, then the petition advances to the second stage. Counsel is appointed to represent the defendant, if necessary (725 ILCS 5/122-4 (West 2002)), and the State is allowed to file responsive pleadings (725 ILCS 5/122-5 (West 2002)).

¶ 20 At this stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. See *Coleman*, 183 Ill. 2d at 381. "To accomplish this, the allegations in the petition must be supported by the record in the case or by its accompanying affidavits." *Coleman*, 183 Ill. 2d at 381. If no such showing

is made, the petition is dismissed. "At the second stage of proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and, in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). If, however, a substantial showing of a constitutional violation is set forth, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2002).

¶ 21     As pointed out above, the only issue raised by defendant on appeal is whether he has presented an arguable claim that his sentences for aggravated criminal sexual assault violate the proportionate penalties clause of the constitution. In response, the State declines to address the merits of defendant's argument, but instead asks this court to affirm the dismissal because the same claim is currently pending in the trial court in defendant's petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). The State attached an unstamped faxed copy of defendant's petition to its brief. The State contends that this court should "defer" ruling on the issue presented to allow the trial court to address it in the section 2-1401 petition. The State does not contest that defendant could raise this issue on appeal, but asserts that this court is not mandated to consider it. While the State's argument is technically correct, we choose to consider whether defendant has presented an arguable claim to warrant second stage proceedings under the Post-Conviction Act.

¶ 22     The proportionate penalties clause of the Illinois Constitution declares that "[a]ll penalties shall be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11. In *People v. Sharpe*, 216 Ill. 2d 481, 521 (2005), the Illinois Supreme Court held that a defendant may raise two types of proportionate penalties challenges: (1) a penalty violates the proportionate penalties clause if it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community; or (2) the proportionate penalties clause is violated where offenses with identical elements are given different sentences.

¶ 23     In *People v. Hauschild*, 226 Ill. 2d 63, 86-87 (2007), the supreme court held that the "defendant's sentence for armed robbery while armed with a firearm (720 ILCS 5/18-2(b) (West 2000)) violates the proportionate penalties clause because the penalty for that offense is more severe than the penalty for the identical offense of armed violence predicated on robbery with a category I or category II weapon (720 ILCS 5/33A-3(a), (a-5) (West 2000))." While the supreme court agreed with the State's assertion that armed robbery could not serve as the predicate felony because it was excluded under the armed violence statute, the court found that "the offense of *robbery* was not excluded." (Emphasis in original.) *Hauschild*, 226 Ill. 2d at 85.

> "The armed violence statute includes, as an element of the offense, the commission of certain felonies, including robbery, 'while armed with a dangerous weapon.' 720 ILCS 5/33A-2(a) (West 2000). It therefore follows that every charge of armed violence predicated on robbery would also be an armed robbery. Thus, because the armed violence statute unambiguously allows robbery to serve as a predicate offense, and those robberies are inherently committed while armed, we must enforce the statute as

enacted and may not depart from the language by creating exceptions, limitations, or conditions not expressed by the legislature." *Hauschild*, 226 Ill. 2d at 85.

¶ 24 The supreme court in *People v. Clemons*, 2012 IL 107821, considered whether *Hauschild* remained valid after the legislature amended the armed violence statute in 2007. At issue in that case was the effect of Public Act 95-688, which amended the armed violence statute as follows.

"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law, except first degree murder, attempted first degree murder, intentional homicide of an unborn child, second degree murder, involuntary manslaughter, reckless homicide, predatory criminal sexual assault of a child, ~~aggravated criminal sexual assault, aggravated kidnaping~~, aggravated battery of a child, home invasion, or any offense that makes the possession or use of a dangerous weapon either an element of the base offense, an aggravated or enhanced version of the offense, or a mandatory sentencing factor that increases the sentencing range ~~armed robbery, or aggravated vehicular hijacking~~." (Underlining and strikeouts in original.) Pub. Act 95-688, § 4 (eff. Oct. 23, 2007) (amending 720 ILCS 5/33A-2).

¶ 25 The *Clemons* court agreed with the State that simple robbery could no longer serve as the predicate felony for armed violence, but declined to overrule *Hauschild*. *Clemons*, 2012 IL 107821, ¶ 17. The court observed that the amendment to the armed violence statute was adopted after its analysis of the statute in *Hauschild* and that " 'while the General Assembly can pass legislation to prospectively change a judicial construction of a statute if it believes that the judicial interpretation was at odds with legislative intent, it cannot effect a change in that construction by a later declaration of what it had originally intended.' " *Id.* ¶ 18 (quoting *People v. Nitz*, 173 Ill. 2d 151, 163 (1996)). Thus, "*Hauschild* remains the law as to the meaning of the armed violence statute prior to its amendment by Public Act 95-688." *Id.* ¶ 19.

¶ 26 Here, defendant was sentenced prior to the effective date of Public Act 95-688 and contends that under the identical elements test, his sentences violate the proportionate penalties clause. He argues that aggravated criminal sexual assault with a firearm and armed violence based on a sexual assault have identical elements, but carry different penalties. "The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during *** the commission of the offense *** (8) the accused was armed with a firearm." 720 ILCS 5/12-14(a)(8) (West 2004) (now 720 ILCS 5/11-1.30(a)(8) (West 2012)). Aggravated criminal sexual assault while armed with a firearm is a Class X felony, which has a sentencing range of 6 to 30 years, with an additional 15-year enhancement, making the sentencing range 21 to 45 years. 730 ILCS 5/5-8-1(a)(3) (West 2004) (now 730 ILCS 5/5-4.5-25 (West 2012)); 720 ILCS 5/12-14(d)(1) (West 2004).

¶ 27 In comparison, "[a] person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law," including criminal sexual assault. 720 ILCS 5/33A-2 (West 2004). A person is considered "armed with a dangerous weapon" under the armed violence statute "when he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon." 720 ILCS

5/33A-1(c)(1) (West 2004). A Category I weapon includes "a handgun, sawed-off shotgun, sawed-off rifle, any other firearm small enough to be concealed upon the person, semiautomatic firearm, or machine gun." 720 ILCS 5/33A-1(c)(2) (West 2004). Armed violence is a Class X felony, with a sentencing range of 15 to 30 years. 720 ILCS 5/33A-3(a) (West 2004).

¶ 28    This court in *People v. Hampton*, 406 Ill. App. 3d 925, 942 (2010), followed *Hauschild*'s holding when it considered the same charge in the instant case, aggravated criminal sexual assault when compared to armed violence premised on criminal sexual assault. The court found, and the State agreed, that under *Hauschild*, "the 15-year add-on for aggravated criminal sexual assault with a firearm is unconstitutional" and remanded for resentencing. *Hampton*, 406 Ill. App. 3d at 942.

¶ 29    Based on *Hauschild* and *Hampton*, the 15-year enhancement for the aggravated criminal sexual assault with a firearm has been found to be unconstitutional and defendant has shown that he is entitled to postconviction relief on this issue. The armed violence statute in effect at the time of defendant's crime and sentencing excluded aggravated criminal sexual assault, but did not exclude criminal sexual assault. The aggravating factor in the criminal sexual assault was the possession of a firearm, which is identical to armed violence based on the commission of a criminal sexual assault. At the time of defendant's sentencing hearing, the sentence for aggravated criminal sexual assault with a firearm, 21 to 45 years, was disproportionate to the penalty for armed violence predicated on criminal sexual assault, 15 to 30 years. Thus, under *Hampton*, defendant's 15-year enhancements for the aggravated criminal sexual assault sentences violate the proportionate penalties clause and are unconstitutional.

¶ 30    Generally, we would remand this matter to the trial court for second stage of postconviction proceedings. However, this issue does not present any factual dispute which requires an evidentiary hearing. Since prior case law has concluded that the 15-year enhancement for aggravated criminal sexual assault violates the proportionate penalties clause, defendant is entitled to be resentenced without the unconstitutional enhancement. We make this ruling pursuant to our supervisory authority under Illinois Supreme Court Rule 615(b)(2). Ill. S. Ct. R. 615(b)(2); see also *People v. Wilburn*, 338 Ill. App. 3d 1075, 1078 (2003). Accordingly, we reverse the dismissal of defendant's postconviction petition, grant defendant's postconviction petition on this issue, vacate his sentences for aggravated criminal sexual assault, and remand for resentencing on those counts.

¶ 31    Reversed and remanded for resentencing.