2024 IL App (1st) 221610-U

No. 1-22-1610

Order filed November 6, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 22405 |
| | ) | |
| ROBERT MONSON, | ) | Honorable |
| | ) | Patrick Coughlin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where defendant's postconviction petition made a substantial showing of ineffective assistance of appellate counsel based on counsel's failure to challenge defendant's attempted first degree murder sentence on direct appeal, we reverse the dismissal of the petition, vacate defendant's sentence for attempted murder, and remand for resentencing.

¶ 2    Following a 2006 jury trial, defendant Robert Monson was convicted of attempted first degree murder and aggravated battery, and sentenced to consecutive, respective terms of 50 and 3 years' imprisonment. Defendant's sentence for attempted murder included a 25-year sentencing

enhancement based on defendant having discharged a firearm that proximately caused great bodily harm, permanent disability, or permanent disfigurement. See 720 ILCS 5/8-4(c)(1)(D) (West 2006). In this appeal, he challenges the second-stage dismissal of his *pro se* petition for postconviction relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)), in which, among other things, he had challenged the 25-year firearm enhancement imposed by the trial court at sentencing.

¶ 3     On appeal, defendant contends that, where the statute creating the 25-year firearm enhancement that was imposed by the trial court was unconstitutional and void *ab initio* at the time of his offense, that portion of his sentence is void. In the alternative, he contends that enforcement of the 25-year firearm enhancement against him violates his right to due process and that his appellate counsel was ineffective for failing to make such an argument on direct appeal. The State concedes that defendant's petition substantially stated a claim that appellate counsel was ineffective for failing to raise the due process issue. We agree with the parties and, for the reasons that follow, reverse the dismissal of defendant's postconviction petition on the issue of ineffective assistance of appellate counsel, vacate his sentence for attempted first degree murder, and remand for resentencing on that count.

¶ 4     Defendant's conviction arose from a shooting that occurred on September 6, 2005. Following arrest, he was charged with multiple firearm-related offenses, including one count of attempted first degree murder. Prior to trial, on April 11, 2006, the State filed notice of its intention to seek a 25-year sentencing enhancement on the charge of attempted first degree murder based on defendant having discharged a firearm that proximately caused great bodily harm, permanent disability, or permanent disfigurement. 720 ILCS 5/8-4(c)(1)(D) (West 2006). Relevant here, the

jury found defendant guilty of the attempted first degree murder of one victim and the aggravated battery of another victim. For the attempted murder, the trial court imposed a sentence of "25 yrs Class X + 25 yrs discharge of a firearm, total of 50 yrs @ 85% based on severe bodily injury." For the aggravated battery, the court imposed a consecutive sentence of three years in prison.

¶ 5    Defendant filed a *pro se* posttrial motion in which he raised 17 allegations of ineffective assistance of counsel. The trial court denied the motion and defendant appealed. This court remanded to the trial court for the purpose of conducting an inquiry, pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), into defendant's *pro se* claims of ineffective assistance of counsel. *People v. Monson*, No. 1-06-1682 (2008) (unpublished order under Illinois Supreme Court Rule 23). Pursuant to our order, the trial court conducted a hearing on defendant's 17 claims of ineffective assistance of counsel. Defendant indicated his desire to proceed *pro se* at this hearing and the trial court allowed his request. At the conclusion of the hearing, the trial court denied the posttrial motion.

¶ 6    On direct appeal, we rejected defendant's contention that the trial court should have *sua sponte* appointed counsel to represent him on his posttrial motion. We also rejected defendant's claims of ineffective assistance of trial counsel and his contention that he was improperly sentenced to an additional 25 years in prison because of a defective jury instruction where the word "the" was erroneously inserted in front of the phrase "great bodily harm." *People v. Monson*, 2012 IL App (1st) 101350-U.

¶ 7    On May 20, 2013, defendant filed the *pro se* postconviction petition at issue in this appeal. In the petition, he argued, *inter alia*, that his sentence was unconstitutional because the 25-year sentencing enhancement that was applied to him had been ruled unconstitutional in *People v.*

*Morgan*, 203 Ill. 2d 470 (2003). Defendant alternatively framed the issue as a constitutional violation in that the firearm enhancement, as applied to him, amounted to an *ex post facto* law and violated his right to due process.

¶ 8 The circuit court advanced the petition to the second stage of postconviction proceedings and appointed counsel to represent defendant. Four years later, defendant hired a private attorney to represent him. After three more years had passed, defendant filed a motion to be allowed to proceed *pro se*. Following a hearing on March 12, 2021, the circuit court allowed defendant to represent himself.

¶ 9 On May 31, 2021, defendant mailed a *pro se* amendment to his petition, arguing, in relevant part, that his appellate counsel was ineffective for failing to raise the *ex post facto* issue on direct appeal.

¶ 10 On April 7, 2022, the State filed a motion to dismiss. The State argued, *inter alia*, that defendant's claim of ineffective assistance of appellate counsel failed where *Morgan* was overruled in *People v. Sharpe*, 216 Ill. 2d 481 (2005), and, therefore, the underlying issue of the constitutionality of the sentencing enhancement was without merit.

¶ 11 Following a hearing on August 12, 2022, the circuit court granted the State's motion to dismiss. With regard to defendant's challenge to the firearm enhancement, the court found that the "statute for attempt murder" had always included the firearm enhancement, defendant's trial took place six months after *Sharpe* was decided, and, under the reasoning of *People v. Hauschild*, 226 Ill. 2d 63 (2007), *Sharpe* applied retroactively to defendant's case. The court also rejected defendant's claim of ineffective assistance of appellate counsel, stating that defendant had failed to show appellate counsel was objectively unreasonable for not challenging the imposition of the

firearm enhancement on direct appeal because "*Sharpe* and *Hauschild* made clear that the 15/20/25-to-life sentencing enhancements were constitutional and that those decisions were retroactive."

¶ 12     On appeal, defendant contends that where, at the time he committed his offense, the statute creating the 25-year firearm enhancement that was imposed by the trial court was unconstitutional and void *ab initio* under controlling law, that portion of his sentence is void and should be vacated. In the alternative, he contends that enforcement of the 25-year firearm enhancement against him violates his right to due process, since retroactively applying the "unexpected holding" of *Sharpe* to his case deprived him of notice and fair warning of his sentencing exposure, and that his appellate counsel was ineffective for failing to make such an argument on direct appeal.

¶ 13     The State concedes defendant's alternative contention, and we agree with the parties.

¶ 14     Under the Act, a criminal defendant may assert that his conviction and sentence were the result of a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1(a) (West 2012). The purpose of a postconviction proceeding is to permit inquiry into constitutional issues that were not, and could not have been, adjudicated previously on direct appeal. *People v. English*, 2013 IL 112890, ¶ 22. Issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *Id.* However, *res judicata* and forfeiture are relaxed where fundamental fairness so requires, the forfeiture stems from the ineffective assistance of appellate counsel, or the facts relating to the issue do not appear on the face of the original appellate record. *Id.* Here, defendant is arguing that we may reach his forfeited due process claim because appellate counsel was ineffective in failing to raise the issue on direct appeal.

¶ 15    The Act provides a three-stage process for adjudicating postconviction petitions. *Id.* ¶ 23. The instant case involves the second stage, where a *pro se* petition may be amended and the State may answer the petition or move to dismiss. 725 ILCS 5/122-5 (West 2012). To survive a motion to dismiss, the burden is on the defendant to make a "substantial showing" of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33.

¶ 16    This court reviews the dismissal of a postconviction petition at the second stage *de novo*. *People v. Huff*, 2024 IL 128492, ¶ 13. In reviewing a petition at this stage, all well-pleaded facts in the petition and supporting documentation are to be taken as true, but nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient. *People v. Rissley*, 206 Ill. 2d 403, 412 (2003). A substantial showing of a constitutional violation "is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." (Emphasis omitted.) *Domagala*, 2013 IL 113688, ¶ 35.

¶ 17    To establish a claim of ineffective assistance of appellate counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) this substandard performance caused prejudice, *i.e.*, a reasonable probability exists that, but for counsel's error, the appeal would have been successful. *English*, 2013 IL 112890, ¶ 33. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *People v. Logan*, 2024 IL 129054, ¶ 82. Counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence for counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Easley*, 192 Ill. 2d 307, 329 (2000). Because a defendant suffers no prejudice from an attorney's

failure to raise nonmeritorious issues on appeal, a reviewing court's inquiry as to prejudice requires examination of the merits of the underlying issue. *People v. Simms*, 192 Ill. 2d 348, 362 (2000).

¶ 18    With these principles in mind, we turn to defendant's underlying claim: that enforcement of the 25-year firearm enhancement against him violated his right to due process, since retroactively applying the "unexpected holding" of *Sharpe* to his case deprived him of notice and fair warning of his sentencing exposure. Analysis of this claim requires an examination of the timeline of defendant's case and the relevant law.

¶ 19    In 2000, the Illinois legislature enacted Public Act 91-404 (Pub. Act 91-404, § 5, eff. Jan. 1, 2000), which, relevant here, amended the sentencing provisions of the offense of attempted first degree murder (720 ILCS 5/8-4(c)(1) (West 2000)). As amended, the statute required the offense of attempted first degree murder to be sentenced as a Class X felony with the mandatory addition of 15 years, 20 years, or 25 years to life, based on the extent to which a firearm was involved in the commission of the offense. See 720 ILCS 5/8-4(c)(1)(B), (c)(1)(C), (c)(1)(D) (West 2000).

¶ 20    On January 24, 2003, the Illinois Supreme Court issued its opinion in *People v. Morgan*, 203 Ill. 2d 470, 491-92 (2003), finding that the enhanced sentencing scheme for attempted first degree murder, adding "15-20-25 to life" based on possession or use of a firearm, was unconstitutional because it violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 21    Defendant committed the shooting at issue on September 6, 2005.

¶ 22    One month later, on October 6, 2005, the Illinois Supreme Court issued its opinion in *People v. Sharpe*, 216 Ill. 2d 481 (2005), overruling *Morgan* and reviving the firearm enhancements for attempted first degree murder. See *People v. Abdullah*, 2019 IL 123492, ¶ 6 n.3.

¶ 23    Defendant's trial took place in April 2006 and he was sentenced on May 23, 2006.

¶ 24    In coming to the conclusion that the trial court's application of the firearm enhancement to defendant at sentencing was a violation of due process, we agree with the parties that the Illinois Supreme Court's decision in *People v. Ramey*, 152 Ill. 2d 41 (1992), directs our decision.

¶ 25    In *Ramey*, the trial court found the defendant eligible for the death penalty based on a finding that he committed two murders with reckless indifference to human life. *Id.* at 62. However, at the time of the commission of those murders in 1986, the Criminal Code of 1961 made a defendant who was convicted of the murders of two or more individuals eligible for the death penalty only if the deaths resulted from either an intent to kill more than one person or from separate premeditated acts, and the Illinois Supreme Court had construed that language to include only the mental states of intent and knowledge. *Id.* (citing Ill. Rev. Stat.1985, ch. 38, par. 9-1(b)(3); *People v. Davis*, 95 Ill. 2d 1, 31-36 (1983)). It was not until 1989 that the Illinois Supreme Court held, based on a 1988 amendment to the statute, that the mental state of "reckless indifference to human life" also rendered a defendant eligible for the death penalty under section 9-1(b)(3). *Id.* at 63 (citing *People v. Jimerson*, 127 Ill. 2d 12, 46-49 (1989)).

¶ 26    The defendant in *Ramey* appealed, arguing that, in applying *Jimerson* retroactively, the trial court had violated the prohibition against *ex post facto* laws. *Id.* The Illinois Supreme Court agreed, noting that "the prohibition against such laws applies to new judicial interpretations of statutory law as well as to statutory laws in and of themselves." *Id.*

¶ 27    The *Ramey* court relied on *Bouie v. Columbia*, 378 U.S. 347 (1964), in which the United States Supreme Court held that convictions for violations of a South Carolina statute violated the due process clause of the fourteenth amendment because the statute had not been construed as

prohibiting the acts leading to the defendants' arrests until after their commission. *Ramey*, 152 Ill. 2d at 63-64. The *Bouie* court had noted that the deprivation of the right of fair warning by a statute of the conduct that it criminalizes can result from either vague statutory language or from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language. *Bouie*, 378 U.S. at 352-54. It further observed that an unforeseeable judicial enlargement of a criminal statute also "operates precisely" like a constitutionally proscribed *ex post facto* law, that is, a law which aggravates a crime or makes it greater than it was when committed. *Id.* As such, the *Bouie* court held that the due process clause barred State courts from achieving the same result as the *ex post facto* clause barred State legislatures from achieving. *Id.*

¶ 28    The *Ramey* court explained that "*Bouie* makes it clear that the trial court erred in applying *Jimerson* *** retroactively to this case to find defendant eligible for the death penalty." *Ramey*, 152 Ill. 2d at 64. It concluded that, where the defendant's acts occurred prior to the announcement of the decision in *Jimerson*, "reckless indifference to human life" could not render him eligible for the death penalty. *Id.*

¶ 29    As the State observes in its brief, the factual scenario presented by *Ramey* is the same as the instant case. In *Ramey*, the defendant committed his offenses after the Illinois Supreme Court interpreted the relevant statute to allow the death penalty only for the mental states of intent and knowledge, but before that court interpreted the statute to also allow the death penalty for the mental state of "reckless indifference to human life." See *id.* at 62-63. Here, defendant committed his offense after the *Morgan* court had ruled the firearm sentencing enhancement unconstitutional, but before the *Sharpe* court revitalized it. Thus, under the reasoning of *Ramey*, the trial court erred

and violated defendant's right to due process when it retroactively applied *Sharpe* to find the enhancement applicable to defendant.

¶ 30    We are mindful that, when granting the State's motion to dismiss, the circuit court relied on *Hauschild* to conclude that *Sharpe* did apply retroactively to defendant's case. However, in *Hauschild*, our supreme court found that the reasoning of *Bouie* was inapplicable because the defendant's criminal conduct occurred before the enhanced sentences for his offenses were found unconstitutional and, therefore, he was on notice that his conduct might fall within the scope of the enhancements. *Hauschild*, 226 Ill. 2d at 79. Here, in contrast, defendant's conduct occurred *after* the enhanced sentences for his offenses were found unconstitutional. Thus, *Hauschild* is distinguishable. We agree with the parties that *Ramey*, and not *Hauschild*, applies in the factual scenario presented in the instant case.

¶ 31    Here, it is reasonably probable that defendant's direct appeal would have been successful if appellate counsel had challenged the imposition of the sentencing enhancement based on *Ramey*. Accordingly, we find that appellate counsel was ineffective for failing to raise the issue, that defendant has made a substantial showing of a claim of ineffective assistance of appellate counsel, and, therefore, that the circuit court erred in granting the State's motion to dismiss the petition. Given this conclusion, we need not address defendant's alternative contention that the 25-year firearm enhancement that was applied to him is void because it was entered pursuant to an unconstitutional statute.

¶ 32    As to relief, the parties are in consensus that remand for a third-stage evidentiary hearing is unnecessary, as the record in this case does not require factual development. See *People v.*

*Buffer*, 2019 IL 122327, ¶ 46. We agree. However, defendant has offered several options as to what the appropriate relief in his case should be, and the State is vague in its proposal.

¶ 33     In the section of his opening brief dedicated to his voidness contention, defendant asserted that the appropriate remedy was for this court to simply strike the 25-year enhancement, both because it was "easily severable from the 25-year portion of his sentence that was properly imposed," and because our doing so would serve judicial economy by not involving the lower court. He also argued in the alternative that, if we determined that remand for resentencing was appropriate, we should vacate his entire 50-year sentence and instruct the trial court to apply the attempted murder statute as it existed prior to the enactment of Public Act 91-404 (Pub. Act 91-404, § 5, eff. Jan. 1, 2000). Then, in the section of his opening brief dedicated to his due process and ineffectiveness contention, he asserted, citing *Buffer*, that this court should "vacate the 25-year firearm enhancement, and remand for resentencing." Finally, in his opening brief's conclusion, defendant requested that this court "vacate the 25-year firearm enhancement imposed upon him, or *** vacate his entire 50-year sentence and remand for resentencing."

¶ 34     The State responded in its brief that it agreed with defendant's "proposed remedy of vacating [his] sentence and remanding the case back to the trial court for re-sentencing."

¶ 35     In his reply brief, defendant stated that his "favored relief" is for this court to vacate the 25-year enhancement and leave his 25-year sentence for attempted murder intact. He noted that this court may, under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967), reduce the punishment imposed by the trial court, and that, when imposing sentence, the trial court made it "crystal clear" that his 50-year sentence was made up of a 25-year term for attempted murder plus a 25-year term for the firearm enhancement. However, he also stated that, alternatively, this court

should vacate his entire 50-year sentence and remand for a new sentencing hearing under the law as it existed prior to the passage of Public Act 91-404.

¶ 36    We find that the appropriate remedy is to vacate defendant's entire 50-year sentence for attempted first degree murder and remand for resentencing without the firearm enhancement. See *People v. Toy*, 2013 IL App (1st) 120580, ¶ 30. Remand is appropriate because it allows the trial court to reevaluate the sentence in light of the cumulative sentence and then resentence defendant within the range for attempted first degree murder as it existed prior to being amended by Public Act 91-404. See *People v. Taylor*, 2015 IL 117267, ¶¶ 19-21; *Hauschild*, 226 Ill. 2d at 89; see also *People v. Taylor*, 2022 IL App (3d) 190281, ¶ 33 n.2 (noting that trial courts "craft terms of imprisonment mindful of firearm enhancements, thereby reaching a just sentence for the accused offense" and opining that vacating an enhancement without remanding for resentencing "provides a defendant [an] unjust windfall").

¶ 37    In summary, we reverse the dismissal of defendant's postconviction petition on the issue of ineffective assistance of appellate counsel, vacate his sentence for attempted first degree murder, and remand for resentencing on that count.

¶ 38    Reversed in part; sentence vacated; cause remanded.